**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CANTRELL,**

**Plaintiff,**

**16-cv-00903(JGK)**

**- v.-**

**MEMORANDUM OPINION AND ORDER**

**IGIE ET AL.,**

**Defendants.**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Robert Cantrell, Sr., proceeding *pro se*, is a member of SEIU Local 32BJ (the "Union").[1] Construing the Amended Complaint liberally, the plaintiff claims that the Union breached its duty of fair representation and the Collective Bargaining Agreement (the "CBA"); that certain Union representatives--Johnny Herrera, Lashawn Henry, and Steve Jenkins (the "Individual Union Defendants")--breached their duty of fair representation; and that Nelson Igie, the plaintiff's work supervisor, breached his duty of fair representation, negligently breached a duty to assist the plaintiff with his Union grievance, breached a contract, violated the plaintiff's civil rights, and entrapped the plaintiff.[2]

[1] The Union asserts that it was mistakenly identified as "Union Local 32BJ SEIU" and that its actual name is "SEIU Local 32BJ." See The Union Defs.' Op. Mem. at 1 n.1.

[2] Two days after filing the Amended Complaint, the plaintiff filed a letter enclosing a missing page of the Amended Complaint. See Dkt. 25. Subsequently, the plaintiff filed

The plaintiff initially brought this action in the Supreme Court of the State of New York, New York County. The Individual Union Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because the Court has original jurisdiction over actions against labor unions pursuant to 29 U.S.C. § 185(c).

Mr. Igie has moved to dismiss the plaintiff's claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Separately, the Union and the Individual Union Defendants (collectively, the "Union Defendants") have moved to dismiss the plaintiff's claims against them pursuant to Rule 12(b)(6), or in the alternative, to convert the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

For the reasons explained below, the motion to dismiss filed by Mr. Igie is **granted**, and the motion for summary judgment filed by the Union Defendants is **granted**.

**I.**

The standards applicable to a Rule 12(b)(6) motion apply to the motion filed by Mr. Igie, and the standards applicable to a

---

another letter with new allegations against the defendants, see Dkt. 31, which the Court construed as an amendment to the Amended Complaint, see Dkt. 31. See also Jackson v. NYS Dep't of Labor, 709 F. Supp. 2d 218, 222 n.1 (S.D.N.Y. 2010).

Rule 56 motion apply to the motion filed by the Union Defendants.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a *pro se* complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Union Defendants and the plaintiff have filed documents and affidavits relevant to deciding the Rule 12(b)(6) motion filed by the Union Defendants, and the Union Defendants moved in the alternative to convert their motion to dismiss to a motion for summary judgment pursuant to Rule 12(d). Accordingly, the Union Defendants'

motion should be treated as a motion for summary judgment under Rule 56.[3] See Cardona v. Vidal, No. 06 CIV. 13680 (JGK), 2008 WL 2856455, at *1 (S.D.N.Y. July 24, 2008).

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities

[3] Rule 12(d) provides that "all parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Pursuant to Rule 12(d) and Local Rule 12.1, the Union Defendants provided the plaintiff with notice that their motion might be treated as a motion for summary judgment, and that the plaintiff should submit any evidence relevant to his case. See Dkts. 35-36. The plaintiff thereafter submitted additional documentary evidence. See, e.g., Dkt. 46. Thus, conversion is appropriate in this case. See Cardona v. Vidal, No. 06 civ. 13680 (JGK), 2008 WL 2856455, at *1 n.1 (S.D.N.Y. July 24, 2008); Rutigliano v. City of New York, No. 07 civ. 4614, 2008 WL 110946, at *2 (S.D.N.Y. Jan. 2, 2008) ("[T]he essential inquiry [in a conversion] . . . is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment . . . ." (quoting Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) (internal quotation marks omitted))).

and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); Gallo, 22 F.3d at 1223. In addition, the Court must give a *pro se* litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." Id. (internal quotation marks and citation omitted); see also Cardona, 2008 WL 2856455, at *1.

**II.**

The allegations in the Amended Complaint are accepted as true for the purposes of Mr. Igie's motion to dismiss. With respect to the Union Defendants' motion for summary judgment, the facts are drawn from all of the evidence in the record and are construed in the light most favorable to the plaintiff.

Securitas Security Services ("Securitas") provides security services to third-parties. See Gottheil Decl., Ex. A (The Arbitration Award) at 2. Securitas hired the plaintiff in around 2000, see Gottheil Decl., Ex. A at 2, and the plaintiff joined the Union in around 2005, see Dkt. 46 at 4. Since around 2006, the plaintiff, through Securitas, has worked as an overnight

security guard at Yeshiva University.[4] See Dkt. 46 at 3-4; Gottheil Decl., Ex. A at 2.

In 2009, a branch manager for Securitas claimed that he saw the plaintiff sleeping on the job. Gottheil Decl., Ex. A at 2-3. Securitas suspended the plaintiff for five days without pay and issued him a "final written warning." Gottheil Decl., Ex. A at 5. The plaintiff filed a grievance with the Union contending that he was not actually asleep on the job. Gottheil Decl., Ex. A at 3-4; Dkt. 46 at 5. The Union investigated the plaintiff's grievance and ultimately brought it to arbitration. Dkt. 46 at 4; see also Gottheil Decl., Ex. A at 4. The arbitrator found in favor of the plaintiff because Securitas had not called the branch manager to testify against the plaintiff and the other evidence--including video footage taken from the plaintiff's back that showed the plaintiff slumped in his chair--was inconclusive, meaning that Securitas had not met its burden of demonstrating that the suspension and warning were warranted. Gottheil Decl., Ex. A at 3, 7-8. However, the arbitrator also warned that "falling asleep at work is a very serious offense" and "[e]mployees who do so can and should expect to be dealt with harshly." Gottheil Decl., Ex. A at 7.

[4] Citations to the documents filed by the plaintiff refer to the page numbers of the respective ECF documents.

On July 19, 2014, Mr. Igie, the plaintiff's work supervisor at Securitas, claimed that he found the plaintiff asleep on the job and took a picture as evidence. Am. Compl. at 3, 5; see also Gottheil Decl., Ex. B (The Photograph). Mr. Igie sent the photograph to Securitas, which suspended the plaintiff indefinitely without pay. Am. Compl. at 3. Mr. Igie is not alleged to be a member of the Union.

The plaintiff claims that he was actually reading his employee handbook, and that the picture Mr. Igie took--which shows the plaintiff with his eyes closed--actually only makes it look like he was sleeping because of the angle from which it was taken. Am. Compl. at 5. He also claims that the picture could not have been taken on that July date because he is wearing his fall/winter uniform. Am. Compl. at 5; see also Dkt. 46 at 7-8. Further, the plaintiff claims that Securitas's treatment of him was unfair because Securitas has not taken such harsh actions against other employees who have been caught sleeping. Am. Compl. ¶ 5.

On September 2, 2014, the plaintiff raised these arguments in a complaint with the Union and asked it again to pursue remedies on his behalf. Dkt. 56 at 5; see also Gottheil Decl., Ex. C (The Plaintiff's Complaint to the Union). On February 9, 2015, the Union informed the plaintiff that it had "carefully reviewed the facts and circumstances surrounding [the

plaintiff's] grievance and . . . determined that it lack[ed] sufficient merit for the Union to be likely to prevail in arbitration." Gottheil Decl., Ex. D (The Union's Rejection of the Grievance). Accordingly, the Union stated that it would not pursue the plaintiff's grievance in an arbitration. Gottheil Decl., Ex. D.

The plaintiff appealed the Union's decision to the Union's Grievance Board pursuant to the Union's bylaws.[5] See Gottheil Decl., Ex. E (The Union's Bylaws) at 28; Gottheil Decl., Ex. F (The Union's Appeal Decision). The Grievance Board is a committee of rank and file Union members that hears appeals on grievances decisions, and makes recommendations to the Union's Joint Executive Board as to whether the Union should pursue a case to arbitration. Gottheil Decl., Ex. E at 28. At the time of the appeal, Mr. Herrera and Mr. Henry were two grievance representatives on the Grievance Board, and Mr. Jenkins was the Director of the Union's Contracts and Grievance Center. See Dkt. 25 at 2. Although the plaintiff failed to appear for a hearing before the Board, the Board nevertheless reviewed his appeal,

[5] During the pendency of the appeal, the plaintiff filed a complaint against the Union with the National Labor Relations Board, which dismissed the complaint because the Union had investigated the plaintiff's claim and concluded that it lacked merit, and because the plaintiff had failed to exhaust his claim with the Union. Gottheil Decl., Ex. G (The NLRB Complaint).

but ultimately affirmed the initial decision that the grievance "lacked merit." Gottheil Decl., Ex. F.

The plaintiff claims that Mr. Igie and the Individual Union Defendants participated in a scheme to have Securitas suspend him, and to obstruct the Union process so that the Union would not seek arbitration on his behalf because he has a negative history with those defendants, and because he is a "whistleblower." See Dkt. 25 at 2; Dkt. 37; see also Am. Compl. at 5.

The plaintiff seeks $40,000 in money damages, plus legal fees and costs, and the reimbursement of his Union dues. See Am. Compl. at 5; Dkt. 30.

**III.**

**A.**

The claims against the Individual Union Defendants must be dismissed. "[T]he union as an entity . . . should in the absence of agreement be the sole source of recovery for injury inflicted by it" and "[that] policy cannot be evaded or truncated by . . . suing union agents or members[.]" Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962), overruled in part on other grounds by Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970); see also Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999) (per curiam). Federal law provides "a shield of immunity for individual union

members in suits for the breach of the duty of fair representation." Morris, 169 F.3d at 784; see also Mussafi v. Fishman, No. 12 civ. 2071 (JGK), 2012 WL 5473874, at *9 (S.D.N.Y. Nov. 12, 2012).

The plaintiff is suing the Individual Union Defendants in their respective capacities as agents of the Union. But the plaintiff's claim for breach of the duty of fair representation is properly directed at the Union, not any of its representatives. Accordingly, the claims against the Individual Union Defendants are **dismissed.**

**B.**

A union-represented employee, such as the plaintiff, may bring an action against the employee's union alleging the "hybrid" claims that (1) the plaintiff's employer breached the collective bargaining agreement covering the plaintiff's employment; and (2) the union breached its duty of fair representation. DelCostello v. Int'l Steelworkers of Am., 462 U.S. 151, 164 (1983); see also Mussafi, 2012 WL 5473874, at *4. "[T]he two claims are inextricably interdependent. To prevail against either the company or the Union . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." DelCostello, 462 U.S. at 164-65.

The cause of action arises out of both Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which governs the employer's obligation to honor the CBA, and the union's duty of fair representation, derived from Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), which authorize a union to act as the exclusive representative of all of the employees in the collective bargaining process. See Vaca v. Sipes, 386 U.S. 171, 177 (1967); White v. White Rose Food, 237 F.3d 174, 179 n.3 (2d Cir. 2001).

"A claim for breach of the duty of fair representation consists of two elements." White, 237 F.3d at 179; see also Mussafi, 2012 WL 5473874, at *4. First, the plaintiff must demonstrate that the union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." White, 237 F.3d at 179 (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998)). Second, the plaintiff must demonstrate "a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." Id. (quoting Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126 (2d Cir. 1998)).

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." Spellacy, 156 F.3d

at 129 (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499
U.S. 65, 67 (1991)); see also NLRB v. Local 282, Int'l Bhd. of
Teamsters, Chauffeurs, Warehousemen and Helpers of Am., 740 F.2d
141, 147 (2d Cir. 1984) (the union's conduct must be "so
egregious, so far short of minimum standards of fairness to the
employee and so unrelated to legitimate union interests as to be
arbitrary" (citation and internal quotation marks omitted)). As
the Supreme Court has instructed, "This 'wide range of
reasonableness' gives the union room to make discretionary
decisions and choices, even if those judgments are ultimately
wrong." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45–46
(1998) (citation omitted). Even if union action rises to the
level of negligence, "mere negligence . . . would not state a
claim for breach of the duty of fair representation[.]" United
Steelworkers of Am. v. Rawson, 495 U.S. 362, 372–73 (1990); see
also Mussafi, 2012 WL 5473874, at *4.

A union acts in bad faith when it acts fraudulently,
deceitfully, or dishonestly, White, 237 F.3d at 179, and with
"an improper intent, purpose, or motive," Vaughn v. Air Line
Pilots Ass'n Intl., 604 F.3d 703, 710 (2d Cir. 2010) (quoting
Spellacy, 156 F.3d at 126). A union's discriminatory conduct is
unlawful when it is "intentional, severe, and unrelated to
legitimate union objectives." Amalgamated Ass'n of State Elec.
Ry. & Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 301

(1971); see also Nikci v. Quality Bldg. Servs., 995 F. Supp. 2d 240, 247 (S.D.N.Y. 2014).

In evaluating union conduct, courts must be mindful that a union necessarily possesses “broad discretion in its decision whether and how to pursue an employee’s grievance against an employer.” Tomney v. Int’l Ctr. for Disabled, 357 F. Supp. 2d 721, 737 (S.D.N.Y. 2005) (quoting Chauffers Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990)). Union discretion “is essential to the proper functioning of the collective-bargaining system” because it “promotes settlements, avoids processing of frivolous claims, and strengthens the employer’s confidence in the union.” Id. (quoting Int’l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51 (1979)). “Without these screening and settlement procedures . . . the costs of private dispute resolution could ultimately render the [collective bargaining system] impracticable.” Foust, 442 U.S. at 51. Union decisions are, accordingly, entitled to significant deference. See, e.g., Spellacy, 156 F.3d at 126; Nikci, 995 F. Supp. 2d at 247.

The gravamen of the plaintiff’s claim is that the Union breached its duty of fair representation by failing to take his grievance against Securitas to arbitration. But an employee does not enjoy “an absolute right to have his grievance taken to arbitration.” Vaca, 386 U.S. at 191. Even construed in the light

most favorable to the plaintiff, the evidence does not show that the Union acted arbitrarily, discriminatorily, or in bad faith; instead, it is plain that the Union acted well within in its discretion in declining to pursue the plaintiff’s grievance.

The evidence shows that, after receiving the plaintiff’s grievance against Securitas, the Union investigated the plaintiff’s claim, but determined that his grievance was meritless. Given the record before the Union, that determination was reasonable, and certainly not irrational. The photograph showed that the plaintiff appeared to be sleeping at his desk, an assessment bolstered by eye witness testimony. While the plaintiff would have testified on his own behalf at an arbitration that he was actually reading his employee handbook, and that the photograph of him was taken on a different date or otherwise deceptive, the Union determined, in its discretion, that these would not have been winning arguments. Indeed, the photograph showed that the handbook was located on the plaintiff’s desk, in a different direction from the direction that the plaintiff was facing. The Union’s judgment regarding the grievance was within the realm of reasonable decisions. See, e.g., Jiggets v. Local 32 BJ, SEIU, 10-cv-9082 (DAB), 2011 WL 4056312, at *6 (S.D.N.Y. Aug. 10, 2011) (“[I]t is well settled that a union’s duty of fair representation does not require it to pursue employees' complaints regardless of their merit.”);

Scott v. N.Y. Health and Human Servs. Union, 1199/SEIU, No. 00
civ. 9381, 2003 WL 359534, at *6 (S.D.N.Y. Feb. 6, 2003) ("A
union need not pursue a grievance that it believes meritless.").

The plaintiff nevertheless contends that the Union's
successful arbitration of his grievance against Securitas in
2009 for the same sort of underlying violation--sleeping on the
job--supports his position. However, it is apparent that the
Union made a reasonable determination that the evidence against
the plaintiff in this case was stronger than in the prior case.
The primary documentary evidence supporting the 2009 grievance
showed that the plaintiff was merely slumped in his chair. By
contrast, the documentary evidence in this case included a
photograph depicting the plaintiff's face with his eyes closed
and his body in repose. If anything, the Union's decision to
arbitrate the prior grievance shows that it assessed the
plaintiff's complaints in good faith. See Sanders v. Culinary
Workers Union Local No. 226, 804 F. Supp. 86, 98 (D. Nev. 1992),
aff'd sub nom. Sanders v. Ogden Allied Leisure Servs., Inc., 5
F.3d 539 (9th Cir. 1993).

Similarly, the plaintiff argues that Securitas has condoned
similar "sleeping on the job" behavior by other guards.
Construing his papers liberally, the plaintiff is also arguing
that the Union has been more willing to arbitrate grievances of
its other members. But, as demonstrated by the plaintiff's own

grievance history, the facts underlying any grievance can differ, and the Union has considerable discretion in determining which grievances have merit. There is no evidence in the record to suggest that the Union would have failed to pursue a claim that, in its judgment, had merit.

The plaintiff contends that the Union failed to inform him that it was not going to arbitrate his grievance, which he argues evidences bad faith and discriminatory intent. The contention is belied by the record. The Union informed the plaintiff of its decision, a decision he promptly appealed. In any event, without more, "[t]he failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation." Lettis v. U.S. Postal Serv., 39 F. Supp. 2d 181, 197 (E.D.N.Y. 1998) (collecting cases). Here, the Union was well within its discretion to investigate the grievance, ultimately deciding it to be without merit.

The plaintiff also argues that the Union acted against him in bad faith and with discriminatory intent because at least some of the Individual Union Defendants held a grudge against him. But there is no evidence that any union member, including the Individual Union Defendants, acted improperly in assessing his grievance. In accordance with its typical procedures, the Union reviewed the plaintiff's claim, and determined that "it [was] not in the interest of the Union and its membership to

carry [the plaintiff's] case forward to arbitration." Gottheil Decl., Ex. D. The plaintiff's appeal was reviewed by the Grievance Board. After the plaintiff failed to appear for a scheduled hearing at which he could have presented his case, the Board nevertheless reviewed the appeal, but affirmed the initial decision. Gottheil Decl., Ex. F.

No reasonable person could conclude based on the record that the Union acted arbitrarily, discriminatorily, or in bad faith in deciding not to arbitrate the plaintiff's grievance, especially in light of the considerable deference afforded Unions for such decisions. The claim for breach of the duty of fair representation against the Union is **dismissed**.

**C.**

The plaintiff also asserts that the Union breached the CBA, which he styles as a breach of contract claim. "Ordinarily, an employee's only claim against a union for violation of the terms of a collective bargaining agreement is for violation of the duty of fair representation." Frimpong v. 1199SEIU United Healthcare, No. 07 civ. 7375 (JGK), 2008 WL 3861449, at *3 (S.D.N.Y. Aug. 19, 2008). Pursuant to the third-party beneficiary doctrine, an exception to the general rule, an employee may state a claim against a union for a violation of a collective bargaining agreement by "point[ing] to language in the [CBA] specifically indicating an intent to create

obligations enforceable against the union by the individual employees.” United Steelworkers of Am. v. Rawson, 495 U.S. 362, 374 (1990).

The plaintiff has failed to present any evidence that the CBA grants him such a right. Therefore, this claim must be **dismissed**.

**III.**

In addition, the Amended Complaint asserts a variety of allegations against Mr. Igie. Construing the Amended Complaint liberally, the plaintiff claims that Mr. Igie breached the duty of fair representation, tortiously breached a duty to assist the plaintiff with his Union grievance, breached a contract, violated the plaintiff’s civil rights, and entrapped the plaintiff. None of the causes of action is legally sufficient.

First, there is no allegation that Mr. Igie is a member of the Union, and therefore Mr. Igie could not have plausibly owed the plaintiff a duty of fair representation. In any event, as explained above, claims for breach of the duty of fair representation cannot ordinarily be brought against the individual agents of a Union. See Morris, 169 F.3d at 784.

Second, the claim that Mr. Igie negligently breached a duty to assist the plaintiff with his Union grievance simply recasts as a tort the claim for the breach of duty of fair representation, and must fail for the same reason. There is no

plausible inference that Mr. Igie owed the plaintiff a duty to assist him in the Union grievance review process.[6] See, e.g., Baptiste v. N.Y.C. Transit Auth., 814 N.Y.S.2d 136, 138 (App. Div. 2006) (duty is an element of a claim for negligence).

Third, the plaintiff alleges that Mr. Igie breached a contract with the plaintiff, but the plaintiff has failed to identify any contract that Mr. Igie breached. See Posner v. Minn. Mining & Mfg. Co., 713 F. Supp. 562, 563 (E.D.N.Y. 1989) ("[I]n asserting a breach of contract claim, the complaint must plead the terms of the agreement upon which defendant's liability rests."). To the extent that the plaintiff is trying to allege that there was a violation of the CBA, Mr. Igie is not a party to the CBA, and Securitas is not a party to this lawsuit.

Fourth, the plaintiff's claim that Mr. Igie violated the plaintiff's "civil rights"--which appears to be best construed as a claim for retaliation or wrongful termination--is too conclusory and nonspecific to state a claim for relief. See Jackson v. NYS. Dept of Labor, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) ("[E]ven *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a

[6] To the extent that the negligence claim is directed at the Union, it must be dismissed as well. See United Steelworkers, 495 U.S. at 372–73.

right to relief above the speculative level.”). Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff’s allegations must at least give a defendant fair notice of the plaintiff’s claims against the defendant. The Amended Complaint does not meet this threshold. The Amended Complaint does not include any factual allegations that could support a retaliation claim beyond the plaintiff’s conclusory assertion that he is a “whistleblower.” Moreover, there is no plausible basis from which to conclude that Mr. Igie discriminated against the defendant on account of the plaintiff’s membership in any protected category, such as race, religion, or national origin. Based upon the Amended Complaint, it is not even possible to discern the source of the plaintiff’s action for a violation of “civil rights.” Such allegations cannot state a claim upon which relief can be granted.

Finally, entrapment is a defense that can be raised in a criminal proceeding. It is not an independent civil cause of action. See DiBlasio v. City of New York, 102 F.3d 654, 656-57 (2d Cir. 1996).

Accordingly, the plaintiff’s claims against Mr. Igie must be **dismissed**.

**IV.**

Judgment has been granted for the Union Defendants, and accordingly the claims against them are **dismissed with**

**prejudice**. The claims against Mr. Igie for breach of the duty fair representation, negligently breaching a duty to assist the plaintiff with his Union grievance, and entrapment are **dismissed with prejudice** because further amendment would be futile.

The claims against Mr. Igie for breach of contract and violation of "civil rights" are **dismissed without prejudice**. Rule 15(a) provides that leave to file an amended complaint should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." (citation omitted)). The plaintiff is proceeding *pro se* and has only amended his complaint once, although subject to a subsequent letter amendment. Under these circumstances, the plaintiff should be allowed to amend his complaint.

If the plaintiff files an amended complaint that includes a breach of contract claim against Mr. Igie, the plaintiff must allege the contract that Mr. Igie breached, and how Mr. Igie breached that contract. If the plaintiff chooses to reassert his claim for a "violation of civil rights," he should include in his amended complaint the statutory source for his claim, and detailed factual allegations to support that claim, as well as any other claim. The plaintiff must also include in the complaint a sufficient basis for the court to have subject

matter jurisdiction over any of his claims. See Jackson, 709 F. Supp. 2d at 229.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Union Defendants' motion for summary judgment is **granted,** and the action against them is **dismissed with prejudice**.

The claims against individual defendant Nelson Igie for breach of the duty of fair representation, negligently breaching a duty to assist the plaintiff with his Union grievance, and entrapment are **dismissed with prejudice.** The claims against Mr. Igie for breach of contract and violation of "civil rights" are **dismissed without prejudice to renewal.** The plaintiff may file an amended complaint by January 10, 2017. If the plaintiff fails to file an amended complaint by that date, the remaining claims against Mr. Igie will be dismissed with prejudice.

The Clerk is directed to close all open motions.

**SO ORDERED.**

**Dated: New York, New York**
**December 8, 2016**

/s/
**John G. Koeltl**
**United States District Judge**